BROWN, Chief Judge.
| jPlaintiffs, Charles M. and Carol Costello, doing business as Charles M. Costello Farms, sued to recoup from defendant banks and creditors funds stolen from plaintiffs by their employee/bookkeeper, who wrote company checks to pay her personal debts. The trial court found that plaintiffs’ action against defendant banks had prescribed and sustained defendants’ exceptions of prescription. Plaintiffs appealed. We affirm.

Facts and Procedural History

From 1971 to November 11, 2006, Maria LaForge worked as the bookkeeper for the Costellos and their farming operations. During this time, LaForge became close to the Costello family, and she was entrusted with control of their financial matters. In the late 1970s or early 1980s Charles Costello signed the necessary documents authorizing LaForge to sign cheeks drawn on his farm account which he maintained at Capital One Bank, N.A.[1] Capital One sent Costello monthly bank statements showing all deposits and withdrawals, together with copies of the checks issued. At some point, Costello began to have all of his bank statements sent directly to the farm office. Later, he allowed LaForge to have the monthly statements sent to her home in Kilbourne. Costello acknowledged that he delegated everything concerning his bank account to LaForge. She was authorized to issue and sign checks, post all checks and deposits, receive and reconcile all bank statements, and perform any and all other bookkeeping and accounting functions.
|;>On or about November 8, 2006, Costello visited the Capital One branch in Bas-trop. While there, he noticed images on the teller’s computer monitor of checks drawn from his farm account that were payable to creditors with which he had no account. He obtained copies of these checks and confronted LaForge the following day. LaForge admitted that she had written and signed checks on the Costello farm account to pay her bills. Two days later, LaForge committed suicide.
Following LaForge’s death, Costello located the bank statements that Capital One had sent him and had his CPA review those statements. The CPA determined that from 2000 to 2006 LaForge had embezzled or converted funds in Costello’s account in the amount of approximately $280,437.33. In testimony, Charles Costello acknowledged that had he examined the bank statements, he would have realized that checks had been issued to entities which were not his creditors. Also, he admitted that he had given LaForge the opportunity to misappropriate funds from his account by allowing her to receive and have exclusive possession of his bank statements from Capital One.
The present suit was filed on October 2, 2007.[2] The Costellos sought to recover from LaForge’s creditors/payees the amount of the checks that they received. *1111 They also sought recovery from Capital One for the unauthorized payment of these checks drawn on the Costello farm account. Defendants Citibank (South Dakota) N.A., Citifinancial, Inc., and Regions IsBank Inc., filed exceptions of prescription. Capital One also filed an exception of prescription. Defendants argued that plaintiffs’ claims were tort claims that are subject to a one-year liberative prescriptive period. Plaintiffs insisted that their claims were governed by the Uniform Fiduciaries Law, which does not set a prescriptive period for actions brought under it. La. R.S. 9:3801, et seq. Because there is no prescriptive period set under the Uniform Fiduciaries Law, plaintiffs argued that the prescriptive period of ten years as provided by La. C.C. art. 3499 is appropriate. La. C.C. art. 3499 states that “unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years-” Plaintiffs argued alternatively that even if the one-year liberative prescription applies, then the discovery rule under contra non valen-tón would suspend the running of prescription. They also argued a continuing tort theory, i.e., that the banks should not be able to avoid their misconduct when they never stopped engaging in it.
The trial court granted the exceptions and dismissed all prescribed claims against defendants Citibank, N.A., Citifinancial, Inc., Regions Bank Inc., and Capital One Bank, N.A. The other named defendants have either settled or taken no action and are not involved in this appeal. In response to plaintiffs’ request for written reasons for judgment, the trial court, on December 17, 2009, entered per curiam a order stating in part that:
... all of the plaintiffs’ claims or causes of action, however they may be classified, are subject to a one-year liberative prescription under the applicable statutes and the Court finds no basis under the circumstances to deny the peremptory exceptions. With respect to the issue of notice and the running or accrual of prescription, it is again the plaintiffs’ breach of |4duty with respect to review and reconciliation of the statements of the accounts in question and the accompanying failure to adequately supervise the book keeper and thereby timely identify unauthorized transactions which is the focal point of the Court’s analysis. The plaintiffs would have had notice and in fact are charged with having been reasonably notified at the time it became incumbent upon them to review and reconcile the statements in question.
Plaintiffs filed a timely appeal.

Discussion

Citibank, Citifinancial and Regions Bank

Plaintiffs alleged that LaForge issued some 618 checks to the different defendants. Specifically, plaintiffs alleged that Citibank, Citifinancial, and Regions Bank were personal creditors of LaForge and accepted checks written by her on the Costello farm account with actual or constructive knowledge of LaForge’s breach of her fiduciary duty.
It is clear that LaForge was guilty of conversion. A conversion claim is delictual and subject to a one-year prescriptive period. La. R.S. 10:3-420(0.
The Uniform Fiduciaries Law, La. R.S. 9:3805, provides:
If a check or other bill of exchange is drawn by a fiduciary as such or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or de *1112 livering the instrument and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of, or as security for, a personal debt of the fiduciary, to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his | ¿obligation as fiduciary in drawing or delivering the instrument. (Emphasis added).
Louisiana courts have examined claims similar to those made by plaintiffs and have applied a one-year liberative prescription. See Quality Gas Products v. Bank One Corporation, 03-1859 (La.App. 1st Cir.06/25/04), 885 So.2d 1179 (the plaintiffs/employer’s suit against defendant/employee for indorsing check payable to plaintiff and depositing the funds in a personal account amounted to conversion which was subject to a one-year prescriptive period); Peak Performance Physical Therapy and Fitness, LLC v. Hibernia Corporation, 07-2206 (La.App. 1st Cir.06/06/08), 992 So.2d 527, writ denied, 08-1478 (La.10/3/08), 992 So.2d 1018 (a one-year prescriptive period applied to a bank’s actions in accepting misappropriated checks, where a bookkeeper deposited-checks made payable to the LLC and its members into a personal account); Matthews v. Bank One Corp., 44,818 (La.App.2d Cir.10/28/09), 25 So.3d 952 (despite the contention of plaintiffs, the underlying conduct by the defendant was the unauthorized withdrawal of funds from plaintiffs’ account, and that such an action was in conversion or breach of fiduciary duty, both of which were subject to a one-year prescriptive period); Daube v. Bruno, 493 So.2d 606 (La.1986) (an action by a true owner and payee of check against payor for payment on a forged indorsement is a tort action, subject to a one-year prescriptive period).
The conduct underlying plaintiffs’ claims against defendant creditors is La-Forge’s conversion of checks from plaintiffs’ farm account and defendants’ acceptance of those check in satisfaction of LaForge’s personal | r,debt. Regardless of how plaintiffs classify their claims against defendants, Louisiana jurisprudence holds that they are conversion claims and such claims against financial institutions are subject to a one-year prescriptive period.
Additionally, regarding any claim of a fiduciary duty owed by these banks, La. R.S. 6:1124 provides, in pertinent part:
No financial institution ... shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties ... unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.... Any claim for breach of a fiduciary responsibility of a financial institution ... may only be asserted with one year of the first occurrence thereof.
Defendants, Citibank, Citifinancial, and Regions, as creditors of LaForge, had no contractual, employment, or mandate relationship with the plaintiffs upon which to base a personal action subject to a ten-year prescriptive period.

*1113
Capital One

A similar holding is compelled on the companion claim of plaintiffs for the unauthorized payment of checks drawn on the farm account at Capital One Bank. First, LaForge was an authorized signatory party for the farm account. Therefore, under La. R.S. 10:4-401(a), “[a]n item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.”
Next, although these claims sound in breach of contract that arise from the payment of negotiable instruments, plaintiffs breached their duty to examine and reconcile bank statements sent to them by Capital One Bank. | ./Therefore, their claims have prescribed under La. R.S. 10:4 — 406(f) which provides:
Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (Subsection (a)) discover and report the customer’s unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.
Plaintiffs’ failure to review the statements which were sent to them has caused their claims to prescribe.

Contra non valentem

Plaintiffs’ argument in favor of applying the doctrine of contra non valen-tem is likewise without merit. The supreme court discussed the doctrine of contra non valentem in Wimberly v. Gatch, 93-2361 (La.04/11/94), 635 So.2d 206. The courts created the doctrine of contra non valentem as an exception to the general rules of prescription. The doctrine is contrary to the express provisions of the Civil Code. The principles of equity and justice which form the mainstay of the doctrine, however, demand that under certain circumstances prescription be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will.
Generally, the doctrine of contra non valentem suspends prescription where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Rajnowski v. St. Patrick’s Hospital, 564 So.2d 671 (La.1990).
Had Costello merely glanced at the farm account bank statement at any' time, he would have determined the embezzlement by LaForge. In fact, |8when he had a quick glimpse of the computer screen at the bank he immediately knew something was wrong.
The use of negotiable instruments was intended to facilitate the rapid flow of commerce by providing certainty and finality in commercial transactions. Strict application of the limitation period serves this purpose. LaForge’s conversion did not become unlawful after she issued a series of Costello Farms’ checks to her personal creditors; rather, each conversion was unlawful when it occurred. This was not tortious conduct that manifested itself over time. Each time LaForge issued a check on the Costello account to pay one of her bills, she committed a separate wrong and a finite ascertainable amount of damages was sustained.
In Peak Performance, supra at 533, the First Circuit quoted Pero’s Steak House v. Lee, 90 S.W.3d 614 (Tenn.2002), where the Tennessee Supreme Court stated:
Negotiable instruments are intended to facilitate the rapid flow of commerce by providing certainty and finality in commercial transactions. These policies are best served by refusing to apply the *1114 discovery rule and by finding that the cause of action for conversion of negotiable instruments accrues when the instrument is negotiated. Of course, adoption of the majority rule also fosters uniformity, which is a fundamental objective of the Uniform Commercial Code....
We find that the doctrine of contra, non valentem does not apply to suspend prescription of a cause of action for the conversion of a negotiable instrument under La. R.S. 10:3 — 420(f), except in the event of fraudulent concealment. Peak Performance, supra.
| ^Continuing Tort
Plaintiffs assert that the actions of defendants constituted a continuing tort, and thus prescription did not begin to run until the date of the last cashed check. This argument lacks merit. Each deposited check written by LaForge constituted a separate conversion with separate damages. The operating cause of the injury was not a continuous one giving rise to successive damages. There was neither a continuous action on the part of the payees nor a continuous damage suffered by the Costellos, both of which are necessary to find a continuing tort. Metro Electric Maintenance, Inc. v. Bank One Corp., 05-1045 (La.App. 3d Cir.03/01/06), 924 So.2d 446; Ready v. State, 95-1564 (La.App. 3d Cir.06/25/97), 707 So.2d 1250, writ denied, 98-1125 (La.06/05/98), 720 So.2d 687.

Actions on Negotiable and Nonnegotiable Instruments/Payment of Things not Owed

We find no merit in plaintiffs’ second and fourth issues presented for review. The prescriptive period of five years provided for in La. C.C. art. 3498 for actions on negotiable and nonnegotiable instruments is not applicable to the present appeal because the action brought by plaintiffs is not an action on a negotiable instrument, but an action under the Uniform Fiduciaries Law. Also, the prescriptive period of ten years for actions to recover for the payment of things not owed is not applicable to the present case because it is undisputed that the defendants were owed the debts that were paid by LaForge.
| TnConclusion
Based on the foregoing reasons, we affirm the granting of the exceptions of prescription and dismiss those claims that have prescribed, (there are some claims that have not prescribed; i.e. the checks that were cashed within one year of the suit being instituted), against Citibank N.A., Citifinancial Inc., Regions Bank Inc., and Capital One Bank N.A. and remand the case to the trial court for further proceedings consistent with this opinion. Plaintiffs are assessed the cost of appeal.
AFFIRMED AND REMANDED.

. At the time that authorization was granted, the Bank was known as Bastrop National Bank. It was subsequently merged into Hibernia National Bank, which merged into Capital One, N.A., a defendant in this case.

. Citibank (South Dakota), N.A., Regions Bank, Inc., Chase Bank USA, N.A., GE Consumer Finance, Inc., Capital One Bank, N.A., Citifinancial, Inc., Farm Bureau Bank, FSB, and Dell Financial Services, L.P. were named as defendants.