VICTORY, J.
I,We granted this writ application to resolve a split in the courts of appeal regarding whether the fourth category of the doctrine of contra non valentem, i.e., the discovery rule, is applicable to suspend prescription of a conversion claim against a payor under La. R.S. 10:3^120(f). After reviewing the record and the applicable law, we find that the discovery rule cannot suspend the one-year prescriptive period of La. R.S. 10:3-420(f). Therefore, we affirm the judgment of the court of appeal.
FACTS AND PROCEDURAL HISTORY
On August 26, 2010, Specialized Loan Servicing, L.L.C. (“Specialized”) filed a petition asserting a claim for damages against Assurant Specialty Property (“As-surant”), American Security Insurance Company (“American Security”), Donyelle January (“January”), and Capital One Bank (“Capital One”). According to the petition, Specialized was the servicer of a note and mortgage agreement executed by January and affecting January’s property located at 400 Missouri Street, New Iberia, Louisiana. Specialized was the primary insured on a policy covering the property issued by Assurant and its subsidiary and underwriter, American Security. January was the secondary insured. The petition alleges that following a fire on June |⅞8, 2009, American Security issued a check on June 26, 2009, in the amount of $142,242.33, with January and Specialized named as payees. The check was forwarded by American Security to Assurant, who subsequently forwarded the check to January in conformance with the insurance policy. Along with the check, Assu-rant included information explaining the procedures to January for endorsing the check and returning it to Specialized. The petition alleges that “[ujnbeknownst to [Specialized], January negotiated the check to Capital One Bank in New Iberia, on or around July 15, 2009” and that “Capital One Bank cashed the check in favor of January without any endorsement by [Specialized].” The petition states that before discovering January had cashed the check, Specialized contacted January and requested a return of the endorsed check. Upon discovering that January had negotiated the check, Specialized contacted As-surant who told them that the check was made payable to “Specialized Loan Servicing and Donyelle M. January.” However, Assurant claimed that the check had been altered by somebody erasing the word “and” on the check. Based on these claims, Specialized filed a claim with Capital One, asserting that the check cashed by Capital One contained a fraudulent alteration. On February 8, 2010, Capital One rejected the fraud claim. Specialized then filed this lawsuit claiming damages in the amount of $142,242.33, with interest, attorney fees and other damages. The petition alleged that Capital One was liable for *584 conversion under the Louisiana Uniform Commercial Code (the “La. U.C.C.”), La. R.S. 10:3-101-La. R.S. 10:3-605, and general negligence under La. C.C. art. 2315.
Capital One filed a peremptory exception of prescription, alleging that the claim against it was a claim of conversion under the La. U.C.C., specifically La. R.S. 10:3— 420, which claim prescribes one year from the date of negotiation of the check. As the check was negotiated on July 15, 2009, and suit was not filed until August 26, 1 o2010, Capital One argued that Specialized’s claim against it had prescribed. Specialized opposed the exception by arguing that the doctrine of contra non valen-tem applied to suspend prescription until Specialized had knowledge that the check had been negotiated, which did not occur until August 27, 2009. The district court overruled the exception, but the court of appeal granted Capital One’s writ and reversed. Specialized Loan Servicing, L.L.C. v. January, 12-1145 (La.App. 4 Cir. 9/18/12) (unpublished writ action). The court of appeal found that the claim was prescribed on the face of the petition, and thus the burden shifted to Specialized to prove that the claim was not prescribed. Id. While Specialized attached exhibits to its opposition purporting to show that it did not have knowledge that January had cashed the check until August 27, 2009, Specialized failed to introduce these exhibits into the record and thus they could not be considered. Id. Therefore, the court of appeal found that Specialized failed to meet its burden of proving that its claim against Capital One for conversion was not prescribed. Id.
While the court of appeal found that the doctrine of contra non valentem did not suspend prescription in this case, its discussion of Specialized’s attempt to offer exhibits to prove its lack of knowledge implies that the court believed the doctrine could apply in conversion cases on satisfactory proof. We granted Capital One’s writ application to decide the narrow legal issue of whether the fourth category of contra non valentem can apply to suspend prescription of a conversion claim under La. R.S. 10:3-420. Specialized Loan Servicing, L.L.C. v. January, 12-2668 (La.2/22/13), 108 So.3d 759.
DISCUSSION
When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court’s findings of fact on the Lissue of prescription are subject to the manifest error-clearly wrong standard of review. London Towne Condominium Homeowner’s Ass’n v. London Towne Co., 06-401 (La.10/17/06), 939 So.2d 1227, 1231 (cites omitted). However, the sole issue before us is the proper interpretation of La. R.S. 10:3-420. Thus, the case presents a question of law which is reviewed by this court under a de novo standard of review. City of Bossier City v. Vernon, 12-0078 (La.10/16/12), 100 So.3d 301; First Nat. Bank, USA v. DDS Const., LLC, 11-1418 (La.1/24/12), 91 So.3d 944, 951-952; Louisiana Municipal Association v. State, 04-0227 (La.1/19/05), 893 So.2d 809, 835. A de novo review means the court will render judgment after its consideration of the legislative provision at issue, the law and the record, without deference to the legal conclusions of the tribunals below. City of Bossier City, supra at 303.
La. U.C.C.’s conversion statute, La. R.S. 10:3^120, was enacted as part of the state’s 1992 revision to Chapter 3 of Title 10 governing Negotiable Instruments. La. R.S. 10:3-420 applies to circumstances where a payee on a check alleges that a bank paid the check to someone else not entitled to enforce the instrument, providing in pertinent part:
*585 (a) An instrument is converted when
[[Image here]]
(iii) it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.
[[Image here]]
(f) Any action for conversion ... prescribes in one year.
| ¡jHere, Specialized alleges that Capital One made payment with respect to the check to January, a person not entitled to receive payment.[1] Thus, this claim falls squarely under La. R.S. 10:8 — 420(a)(iii). The conversion occurred when Capital One cashed the check for January. La. R.S. 10:3-420(f) provides that an action for conversion prescribes in one year. Thus, unless the doctrine of contra non valentem applies in this case, Specialized’s conversion claim against Capital One prescribed on July 15, 2010, one year from the date Capital One made payment to January.
Although La. C.C. art. 3467 provides that “prescription runs against all persons unless exception is established by legislation,” this Court has applied the jurisprudential doctrine of contra non valen-tem as an exception to this statutory rule. See e.g., Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211. The doctrine of contra non valentem applies as an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. The Court has recognized four instances where contra non valentem can apply: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs actions; (2) where there was some condition coupled with a contract or connected -with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself |fiof his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Wimberly, supra at 211. However, the doctrine of contra non valentem only applies in “exceptional circumstances.” La. C.C. art. 3467, Official Revision Comment (d); State Through Div. of Admin. v. McInnis Bros. Const., 97-0742 (La.10/21/97), 701 So.2d 937, 940; Renfroe v. State ex rel. Dept. of Transp. and Development, 01-1646 (La.2/26/02), 809 So.2d 947, 953.
Here, Specialized argues that the fourth category of contra non valentem applies to suspend prescription because Specialized did not know and could not have known that January improperly cashed the insurance check until American Security informed it of that fact on August *586 27, 2009.[2] The discovery rule provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Eastin v. Entergy Corp., 03-1030 (La.2/6/04), 865 So.2d 49, 55.
Our courts of appeal are split on the issue of whether the discovery rule can suspend prescription of a conversion claim under La. R.S. 10:3-420. The First and Second Circuits have held that the doctrine of contra non valentem cannot be applied to suspend prescription of a cause of action for conversion of a negotiable instrument under La. R.S. 10:3 — 420(f), except in the event of fraudulent concealment by the defendant asserting prescription. ASP Enterprises, Inc. v. Guillory, 08-2235 (La.App. 1 Cir. 9/11/09), 22 So.3d 964, writ denied, 09-2464 (La.1/29/10), 25 So.3d 834; Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp., 07-2206 (La.App. 1 Cir. 6/6/08), 992 So.2d 527, writ denied, 08-1478 (La.10/3/08), 992 So.2d 1018; Costello v. Citibank (South Dakota), N.A., 45,518 (La.App. 2 Cir. 9/29/10), 48 So.3d 1108. The Third Circuit applies the doctrine of contra non valentem to conversion cases on a case by case basis. In LaCombe v. Bank One Corp., 06-1374 (La.App. 3 Cir. 3/7/07), 953 So.2d 161, writ denied, 07-746 (La.6/1/07), 957 So.2d 177, the court held that prescription was suspended where an employer had no reason to suspect that his employee was forging his endorsement and depositing the checks into her own account. In Metro Elec. & Maintenance, Inc. v. Bank One Corp., 05-1045 (La.App. 3 Cir. 3/1/06), 924 So.2d 446, the court refused to apply the discovery rule to suspend prescription because the plaintiff could easily have discovered the conversion had he examined his bank statements. Likewise, in this case, the Fourth Circuit apparently would have applied the discovery rule to suspend prescription had the plaintiff introduced sufficient evidence into the record to prove its lack of knowledge of the conversion. Specialized Loan Servicing, supra.
Specialized cites to other court of appeal cases holding that contra non valentem applies in conversion cases on a case by case basis. See Robinson v. Whitney National Bank, 96-0628 (La.App. 4 Cir. 10/23/96), 683 So.2d 847 (acknowledging the applicability of the doctrine but refusing to apply it where the plaintiff could have discovered the cause of action by examining her bank statements), writ denied, 96-2807 (La.1/6/97), 685 So.2d 120; Chapital v. Guaranty Sav. & Homestead Ass’n, 96-0244 (La.App. 4 Cir. 10/2/96), 681 So.2d 1307 (applying doctrine to suspend prescription until plaintiff became aware that forged check had been deposited), writ denied, 96-2639 (La.12/13/96), 692 So.2d 1068; Johnson v. Concordia Bank & Trust Co., 95-1187 (La.App. 3 Cir. 3/27/96), 671 So.2d 1093 (applying doctrine to suspend prescription on suit against bank for |^wrongfully dispersing interest to tutor); Riceacres, Inc. v. Hayes, 93-310 (La.App. 3 Cir. 2/2/94), 631 So.2d 703 (applying doctrine to suspend prescription where bank paid cashier’s checks over forged endorsement); Black v. Whitney National Bank, 618 So.2d 509, 516 (La.App. 4 Cir.1993) (acknowledging the applicability of the doctrine but refusing to apply it where plaintiff should have discovered forged checks at some point during a nine-year period). However, these cases were decided based on the applicable law prior to the *587 1992 revisions to the Uniform Commercial Code when conversion of a negotiable instrument was governed by former La. R.S. 10:3-419.
Effective January 1, 1994, former La. R.S. 10:3-419 was amended and reenacted as La. R.S. 10:3-420. Former La. R.S. 10:3^19 was silent on the nature of the action for conversion and contained no prescriptive period.[3] This gave rise to a number of appellate decisions on the issue of prescription and whether the five-year period relating to actions on negotiable instruments applied, or whether the one-year prescriptive period relating to delictual actions applied. This Court resolved the Rissue in Daube v. Bruno, 493 So.2d 606 (La.1986), by holding that absent specific legislative treatment of the issue in the conversion statute itself, reference to the general law of delictual obligations was necessary to define the cause of action for conversion and to determine the applicable prescriptive period. By characterizing the action as a tort claim, the Court applied the one-year prescriptive period for delic-tual actions found in La. C.C. art. 3492. The application of the general one-year prescriptive period for delictual actions to conversion claims under former La. R.S. 10:3^19 in Daube provided a basis for other courts to apply the doctrine of contra non valentem to conversion claims, as that doctrine was sometimes used to suspend prescription in tort actions. However, now that the prescriptive period for conversion is specifically provided for in La. R.S. 10:3-420, case law interpreting former La. R.S. 10:3^19 is no longer relevant.
Thus, the res nova issue before us is whether the discovery rule can interrupt the one-year prescriptive period contained in La. R.S. 10:3-420. In making this determination, we must look first to the purpose behind Louisiana’s enactment of its version of the U.C.C. La. R.S. 10:1-103 provides:
(a) This Title shall be liberally construed and applied to promote its underlying purposes and policies, which are:
(1) to simplify, clarify, and modernize the law governing commercial transactions;
(2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and
(3) to promote uniformity of the law among the various jurisdictions.
*588 (b) Unless displaced by the particular provisions of this Title, the other laws of Louisiana supplement its provisions.
The U.C.C. Comment following this statute explains the interaction between this statutory law and other bodies of law, as follows:
|102. Applicability of supplemental principles of law. Subsection (b) states the basic relationship of the Uniform Commercial Code to supplemental bodies of law. The Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law[4] and equity, and relies on those bodies of law to supplement its provisions in many important ways. At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts the principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.
La. R.S. 10:1-103, Official Commercial Code Comment 2.
We also look to the jurisprudence of other states that utilize similar U.C.C. conversion statutes. Cromwell v. Commerce & Energy Bank of Lafayette, 464 So.2d 721, 730 (La.1985) (as “[t]he U.C.C. was adopted in Louisiana in an effort to harmonize the commercial law of Louisiana with that of the other states,” “[w]e should ... examine the jurisprudence of other states” interpreting our corollary statutes). After examining the jurisprudence of other states, it is evident that the overwhelming majority of jurisdictions addressing this specific issue have refused to apply the discovery doctrine to toll the statute of limitations on U.C.C. conversion claims. See e.g., Metz v. Unizan Bank, 649 F.3d 492, 496-99 (6th Cir.2011) (applying Ohio law); Rodrigue v. Olin Emps. Credit Union, 406 F.3d 434, 444-47 (7th Cir.2005) (applying Illinois law); John Hancock Financial Services, Inc. v. Old Kent Bank, 346 F.3d 727, 733-34 (6th Cir.2003) (applying Michigan law); Menichini v. Grant, 995 F.2d 1224, 1229-32 (3rd Cir.1993) (applying Pennsylvania law); Kuwait Airways Corp. v. AmericanSec. Bank, N.A., 890 F.2d 456, 460-63 (D.C.Cir.1989)11 (applying District of Columbia law); Advance Dental Care, Inc. v. SunTrust Bank, 906 F.Supp.2d 442 (D.Md.2012); Calex Exp., Inc. v. Bank of America, 401 F.Supp.2d 407 (M.D.Pa.2005); Gress v. PNC Bank, National Assoc., 100 F.Supp.2d 289 (E.D.Pa.2000); First Investors Corp. v. Citizens Bank, Inc., 757 F.Supp. 687, 690 (W.D.N.C.1991) (applying North Carolina law), aff'd, 956 F.2d 263 (4th Cir.1992); AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 49 Cal.Rptr.3d 493, 500 (Cal.App. 2 Dist.2006); Hawkins v. Nalick, 2012 IL App (5th) 110553, 363 Ill.Dec. 767, 975 N.E.2d 793, 797-99 (2012); Kidney Cancer Ass’n v. North Shore Community Bank and Trust Co., 373 Ill.App.3d 396, 311 Ill.Dec. 512, 869 N.E.2d 186 (Ill.App. 1 Dist.2007); Haddad’s of *589 Illinois, Inc. v. Credit Union 1, Credit Union, 286 Ill.App.3d 1069, 222 Ill.Dec. 710, 678 N.E.2d 322 (Ill.App. 4 Dist.1997); Auto-Owners Ins. Co. v. Bank One, 852 N.E.2d 604, 610-12 (Ind.App.2006), vacated in part on other grounds, 879 N.E.2d 1086 (Ind.2008); Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 477-79 (Iowa 1990); Brennan v. Edward D. Jones & Co., 245 Mich.App. 156, 626 N.W.2d 917, 919 (2001); Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144, 148 (Miss.1998); Yarbro, Ltd. v. Missoula Federal Credit Union, 310 Mont. 346, 50 P.3d 158, 161-63 (2002); Mandolfo v. Mandolfo, 281 Neb. 443, 796 N.W.2d 603, 610-12 (2011); N.J. Lawyers’ Fund for Client Prot. v. Pace, 186 N.J. 123, 892 A.2d 661, 662 (2006); Gerber v. Manufacturers Hanover Trust Co., 64 Misc.2d 687, 315 N.Y.S.2d 601, 603 (N.Y.C.Civ.Ct.1970); Mattlin Holdings, L.L.C. v. First City Bank, 189 Ohio App.3d 213, 937 N.E.2d 1087, 1089-91 (Ohio App. 10 Dist.2010); Palmer Mfg. & Supply, Inc. v. BankOhio Natl. Bank, 93 Ohio App.3d 17, 637 N.E.2d 386 (Ohio App. 2 Dist.1994); Estate of Hollywood v. First Nat. Bank of Palmerton, 859 A.2d 472 (Pa.Super.2004); Fuscellaro v. Industrial Nat’l Corp., 117 R.I. 558, 368 A.2d 1227, 1229-31 (1977); Pero’s Steak & Spaghetti House v. Lee, 90 S.W.3d 614, 621-25 (Tenn.2002); Lyco Acquisition 1984 Ltd. Partnership v. First Nat. Bank of Amarillo, 860 S.W.2d 117, 119 (Tx.App.1993); Southwest Bank & Trust Co. v. Bankers Commercial Life Ins., Co., 563 S.W.2d 329, 331-32 (Tx.App.1978); Wang v. Farmers State Bank of Winner, 447 N.W.2d 516, 518-19 (S.D.1989).
A small number of courts have applied the discovery rule to toll the statute of limitations for conversion of negotiable instruments. See DeHart v. First Fidelity Bank, N.A./South Jersey, 67 B.R. 740, 745 (D.N.J.1986); Stjernholm v. Life Ins. Co. Of N.A., 782 P.2d 810, 811-12 (Colo.Ct. App.1989); Branford State Bank v. Hackney Tractor Co., 455 So.2d 541, 542 (Fla.Dist.Ct.App.1984); UNR-Rohn, Inc. v. Summit Bank of Clinton County, 687 N.E.2d 235, 240-41 (Ind.Ct.App.1997); Gallagher v. Santa Fe Federal Employees Federal Credit Union, 132 N.M. 552, 52 P.3d 412, 416-17 (2002).
In applying the majority rule, courts enforce the U.C.C.’s purpose of promoting swift resolution of commercial disputes. Mandolfo, supra, 281 Neb. 443, 451, 796 N.W.2d 603. The reasoning is that a “discovery rule would be inimical to the underlying purposes of the [U.C.C.], including the goals of certainty of liability, finality, predictability, uniformity, and efficiency in commercial transactions.” Id. (citing Rodrigue, supra at 445-46). Further, these courts conclude that “[t]he finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends.” Id. (citing Haddad’s of Illinois, supra (quoting Fuscellaro, supra)). Further, in rejecting the discovery rule, “many courts reason that the victim of conversion is often in the best position to prevent or detect the loss.” Id. at 452, 796 N.W.2d 603; Haddad’s of Illinois, supra. “Watchful victims of conversion should be able to quickly realize when they have |1sbeen wronged.” Id. Courts applying such a rationale believe that “the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees.” Id. (citing Husker News Co., supra, 460 N.W.2d at 479).
In siding with the majority rule that the “discovery rule” is inapplicable to toll the statute of limitations on an action for conversion of negotiable instruments, the Tennessee Supreme Court emphasized two *590 principles which support the majority holding: (1) the commercial policies which form the basis for the U.C.C. mitigate strongly against open-ended liability on negotiable instruments; and (2) a claim for conversion of a negotiable instrument is unlike other claims to which the “discovery rule” has been applied because the tort of conversion is complete and the injury occurs at the moment the negotiable instrument in converted, regardless of the plaintiffs ignorance of the conversions. Pero’s Steak & Spaghetti House, supra, 90 S.W.3d at 622-24. The court concluded that while “[n]ot applying the discovery rule may very well be harsh in certain cases,” it was “persuaded by the reasoning of the majority view,” stating as follows:
Negotiable instruments are intended to facilitate the rapid flow of commerce by providing certainty and finality in commercial transactions. These policies are best served by refusing to apply the discovery rule and by finding that the cause of action for conversion of negotiable instruments accrues when the instrument is negotiated. Of course, adoption of the majority rule also fosters uniformity, which is a fundamental objective of the Uniform Commercial Code and the TUCC. (Cites omitted.)
Id. at 624.
We agree with the majority view that the discovery rule does not apply in La. U.C.C. conversion cases. The adoption of the majority view fosters uniformity, which is a fundamental objective of the U.C.C. and the La. U.C.C. See La. R.S. 10:l-103(a)(3). We reject Specialized’s argument that because other states have a 114three-year statute of limitations for conversion claims, adoption of the discovery rule would make Louisiana’s conversion more uniform with the other states. The uniformity among the states that should be fostered is the clear-cut rule that the prescriptive period (or statute of limitations) for conversion claims begins to run on the date of the conversion.[5] Having a definite cut-off date for bringing conversion claims promotes the U.C.C.’s purpose of promoting finality, certainty, and swift resolution of commercial disputes. Further, the victims of the conversion are in a much better position to detect the loss, and thus should be responsible for monitoring their accounts and employees to detect if they have been the victim of conversion of funds.
Even without regarding other states’ positions on the matter, our own laws lead to the conclusion that the discovery rule cannot suspend prescription on a conversion claim. First, as we have stated, the discovery rule applies only in “exceptional circumstances.” There is nothing exceptional about conversion cases that would necessitate the application of the discovery rule, because, absent fraud on the part of the defendant,[6] the victim, using some diligence, should be able to quickly discover that he has been the victim of conversion. In fact in this case, even the face of the petition confirms that Specialized had knowledge, before this claim prescribed on July 15, 2010, that January had cashed the check without its endorsement.[7] Second, *591 the La. U.C.C., particularly La. R.S. 10:3-420, governs this claim, and as we have | ^explained, other statutory or jurisprudential rules can only be used to supplement, not supplant, the provisions of the La. U.C.C. The legislature has adopted a strict one-year prescriptive period for conversion claims. Inserting the discovery rule of contra non valentem into the statutory one-year prescriptive period of La. R.S. 10:3-420 would result in this jurisprudential rule supplanting this La. U.C.C. provision, which would be in violation of La. R.S. 10:1-103.
Finally, examination of other La. U.C.C. provisions indicates that had the legislature intended the prescriptive period of La. R.S. 10:3-420 to be suspended by the discovery rule, it would have said so. Other La. U.C.C. statutes with prescriptive periods for negotiable instruments transactions have the discovery rule built in. For instance, La. R.S. 10:3-416, regarding transfer warranties, provides that “a cause of action for breach of warranty under this Section accrues when the claimant has reason to know of the breach.” Further, both La. R.S. 10:3-208 and 10:3-417 regarding presentment warranties provide that “a cause of action for breach of warranty under this Section accrues when the claimant has reason to know of the breach.” Had the legislature intended for the discovery rule to likewise apply in cases alleging conversion of negotiable instruments they would have stated so in La. R.S. 10:3-420.
CONCLUSION
A claim for conversion under the La. U.C.C., specifically La. R.S. 10:3-420, prescribes one year from the date of the conversion. We agree with the majority view of other states that the discovery rule does not apply to suspend the prescriptive period. Refusing to apply the discovery rule best serves the underlying purposes of the U.C.C. and the La. U.C.C. of certainty of liability, finality, predictability, uniformity, and efficiency in commercial transactions, and places the burden of diligence on the party in the best position to detect the conversion. Further, | ^conversion cases do not present the type of “exceptional circumstances” that would merit the application of the jurispruden-tially created discovery rule to suspend the strict one-year prescriptive period created by the legislature.
DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed. AFFIRMED.
KNOLL, J., dissents and assigns reasons.
HUGHES, J., concurs with the result.

. See La. R.S. 10:3-110(d), which in pertinent part provides: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.” U.C.C. Comment 4 that follows La. R.S. 10:3-110 in pertinent part explains:
If an instrument is payable to X and Y, neither X nor Y acting alone is the person to whom the instrument is payable. Neither person, acting alone, can be the holder of the instrument. The instrument is "payable to an identified person.” The "identified person” is X and Y acting jointly. [U.C.C.] Section 3-109(b) and Section 1-102(5)(a). Thus, under [U.C.C.] Section 1-201(20) X or Y, acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument.

. There has been no allegation that Capital One fraudulently concealed the fact that it had cashed the check; therefore, the issue of whether the third category of contra non va-lentem applies to suspend prescription in a conversion case is not before us.

. Former La. R.S. 10:3-419, titled "Willful refusal to accept or pay; payment on a forgery; innocent representation," provided:
(1) When a drawee to whom an instrument is delivered for acceptance refuses to return it on demand; or when a person to whom an instrument is delivered for payment refuses on demand either to pay or to return it; or when a person pays an instrument on a forged indorsement, he is liable to the true owner.
(2) In an action against a drawee under subsection (1) the measure of the drawee’s liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.
(3) Subject to the provisions of this Title concerning restrictive indorsements a representative, including a depository or collecting bank, who was in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable to the true owner beyond the amount of any proceeds remaining in his hands.
(4) An intermediary bank or payor bank which is not a depository bank is not liable solely by reason of the fact that proceeds of an item indorsed restrictively are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor.

. Although Louisiana is a civil law jurisdiction, this reference to common law in the comment is an acknowledgment that the U.C.C. has its roots in common law jurisdictions.

. The cause of action begins to accrue when the act of conversion occurred. In the case of a payor bank, the cause of action begins to accrue on the date of payment. See Rodrigue v. Olin Employees Credit Union, 406 F.3d 434, 441 (7th Cir.(Ill.) 2005).

. As stated, Specialized has not alleged, and the evidence does not point to, any fraud on the part of Capital One.

. The petition alleges that when Specialized found out Capital One had cashed the check, it filed a claim with Capital One asserting that the check purported to contain a fraudulent endorsement, and that on February 8, 2010, *591 Capital One rejected the claim. This plainly shows that Specialized had knowledge of the conversion prior to the July 15, 2010 prescriptive date.