MOORE, J.
I,Hardin Compounding Pharmacy LLC (“HCP”) appeals a partial summary judgment dismissing, on grounds of prescription, all its claims against Progressive Bank based on conversion of instruments that occurred over one year before suit was filed. We affirm.

Factual Background

HCP is a retail pharmacy in West Monroe, Louisiana, run by Tim and Wendy Hardin. They had a business account with Progressive Bank; only Tim and Wendy were authorized to sign for the account. Many of their pharmacy customers paid for prescriptions by check, which Tim or Wendy indorsed “For Deposit Only” and sent to Progressive.
At some point, the Hardins delegated the task of carrying the checks to Progressive to their counter clerk (later promoted to pharmacy tech), Michael Wallace. According to HCP’s petition, Wallace’s only duty was to deposit the checks, not to cash them. Wallace, however, hatched a scheme to defraud HCP by either forging Tim or Wendy’s indorsement, or cleverly altering the payee’s name on some of the checks. For several years, Progressive paid Wallace the cash for these altered checks, and HCP never noticed.
In late September 2010, a teller at Progressive accidentally failed to give Wallace *495 all “his” cash from a deposit; she phoned Tim Hardin to ask if she should hold it until Wallace’s next trip to the bank. Only then did Tim suspect he was being defrauded. He promptly went to Progressive’s main branch, on Cypress Street, reviewed the records, and swore out a warrant for Wallace’s arrest. Wallace is now incarcerated in the Richland Parish Detention Center.

12Procedural History

HCP filed this suit on September 2, 2011, against Progressive and Wallace. It alleged that over the course of 36 months, Wallace improperly cashed, and Progressive improperly paid, at least $158,037.34 on altered checks. It alleged that the bank should have recognized the fraud through the exercise of reasonable care, especially in paying on an indorsement by someone not authorized to sign on the account, and failed to follow its own internal policies and laws governing currency transactions; and Wallace must have had an accomplice or insider working at Progressive, helping him with his scheme and concealing it from auditors. It also alleged that Progressive violated “applicable provisions of the banking code including LSA-R.S. 10:3-420 and converted plaintiffs funds by paying on a forged endorsement.” It prayed for judgment of $158,037.34, or whatever amount it would prove at trial, attorney fees, and a jury trial.[1]
Progressive filed general denials and affirmative defenses; it admitted that Tim and Wendy had executed a “deposit account agreement” when they opened the account. Progressive then filed the instant motion for partial summary judgment. It argued that all HCP’s allegations constituted claims for conversion of instruments, R.S. 10:3 — 420(a)(iii), and the prescriptive period for such claims was one year, R.S. 10:3-420(f). It sought to dismiss claims for any of Wallace’s conversions that occurred before September 2, 2010, leaving claims of only $7,971.66. In support, it attached a copy of HCP’s original petition and the affidavit of Progressive’s internal auditor, |aPhylIis Tyler, stating that Wallace had altered 39 checks totaling $7,971.66 between September 2 and September 24, 2010.
HCP opposed the motion, urging that because the altered checks never went through the account, HCP could not detect the thefts by simply reviewing its bank statements. In support, HCP filed the affidavit of Tim Hardin and (uncertified) copies of Progressive’s bank policy, “Chapter Three: Checks and Check Handling.” However, it filed nothing to show that Wallace had a confederate inside Progressive.
At a hearing in September 2012, Progressive reiterated that this was a straightforward claim for conversion under R.S. 10:3-420 and limited by that statute’s prescriptive period of one year. HCP countered that Louisiana’s UCC did not displace all state law, R.S. 10:l-103(3)(b), and specifically that 3-420 did not supplant the claims for breach of banking agreement, breach of internal regulations, or suspension of claims for contra non valen-tem or fraudulent concealment.
The court stated that it disliked the outcome, and sincerely hoped that the court of appeal would reverse, but that Progressive had presented the applicable law: one-year prescription applied. The court granted partial summary judgment as prayed for. HCP took this appeal, which the district court certified as immediately appealable under La. C.C.P. art. 1915 B.

*496
The Parties’ Positions

Progressive calls this court’s attention to the recent decision of Specialized Loan Servicing LLC v. January, 2012-2668 (La.6/28/13), 119 So.3d 582, an opinion rendered after the instant appeal was taken and the original briefs filed. Progressive shows that Specialized Loan held: (1) La. |4R.S. 10:3-420 applies to circumstances where a payee on a check alleges that a bank paid the check to someone else not entitled to enforce the instrument, (2) the prescriptive period for conversion claims is one year, R.S. 10:3 — 420(f), beginning to run on the date of the conversion, and (3) the fourth category of contra non valen-tem, when the cause of action is not known or reasonably knowable by the plaintiff, does not apply to the prescriptive period for conversion claims. Progressive urges that Specialized Loan merely confirms this court’s, and other appellate courts’, jurisprudence. Costello v. Citibank (South Dakota) NA, 45,518 (La.App. 2 Cir. 9/29/10), 48 So.3d 1108; ASP Enters. v. Guillory, 2008-2235 (La.App. 1 Cir. 9/11/09), 22 So.3d 964, writ denied, 2009-2464 (La.1/29/10), 25 So.3d 834. Progressive finally cites the legislative history of R.S. 10:3^120 as supporting Specialized Loan’s conclusion that the one-year prescriptive period was intended to apply to any claim for conversion. Progressive urges that the judgment should be affirmed.
HCP counters that Specialized Loan has no bearing on the instant case as the plaintiff there was not a customer of the defendant bank, had no contract with the defendant bank, and did not raise a breach of contract claim — all of which HCP affirmatively was and did. HCP contends that it advanced three legal theories — breach of contract, U.C.C. statutory negligence and U.C.C. statutory conversion under R.S. 10:3-420 — none of which is affected by Specialized Loan. In its original brief, HCP urged that Louisiana’s U.C.C. does not generally preempt state law; R.S. 10:103(b) states, “Unless displaced by the particular provisions of this Title, the other laws of Louisiana supplement its provisions.” In support, it cited Webb Carter Const. Co. v. Louisiana Central Bank, 922 F.2d 1197, 15 UCC Rep.Serv.2d 196 (5 Cir.1991), and dictum in Costello v. Citibank (South Dakota) NA, supra.[2] HCP strongly urged that its claim against Progressive was, in essence, one for breach of contract for failing to act according to its established internal standards or commercially reasonable standards in handling HCP’s account.[3] HCP suggested that its contract claim is subject to the 10-year period of La. C.C. art. 3499, or at least the general three-year period for U.C.C. claims 'not otherwise limited, La. R.S. *497 10:3-118(g). Finally, HCP argued that even if the one-year period applied and was not suspended by contra non valen-tem, it was nonetheless suspended for fraudulent concealment, as held in La-Combe v. Bank One Corp., 2006-1374 (La. App. 3 Cir. 3/7/07), 953 So.2d 161, 62 U.C.C. Rep. Serv.2d 104, writ denied, 2007-0746 (La.6/1/07), 957 So.2d 177, and suggested by dicta in Peak Performance Phys. Therapy v. Hibernia Corp., 2007-2206 (La.App. 1 Cir. 6/6/08), 992 So.2d 527, writ denied, 2008-1478 (La.10/3/08), 992 So.2d 1018, and Costello v. Citibank (South Dakota) NA, supra. HCP argued that the court could not render summary judgment without letting the plaintiff conduct discovery as to whether a bank employee engaged in lfifraudulent concealment. HCP sought reversal and remand.

General Principles

Liberative prescription is a mode of barring actions as a result of inaction for a period of time. La. C.C. art. 3447. There is no prescription other than that established by legislation. La. C.C. art. 3457. Although the party pleading prescription ordinarily has the burden of proving it, when the face of the petition shows that the action has prescribed, the burden shifts to the plaintiff to show why the claim has not prescribed. Hogg v. Chevron USA, 2009-2632 (La.7/6/10), 45 So.3d 991.
Although the defense of prescription is typically urged by peremptory exception, it may also be raised by motion for summary judgment. Hogg v. Chevron USA, supra. Summary judgment shall be rendered if the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. If the mover will not bear the burden of proof at trial, his burden on the motion requires him not to negate all essential elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966 C; Hogg v. Chevron USA, supra. Once the mover meets this burden, the burden then shifts to the opponent (usually the plaintiff) to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966 C(2); Hogg v. Chevron USA, supra. In this situation, the plaintiff may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or 17otherwise, must set forth specific facts showing that there is a genuine material fact for trial. La. C.C.P. art. 967 B; Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. Only evidence admitted for purposes of the motion for summary judgment shall be considered by the court in its ruling on the motion. La. C.C.P. art. 966 E(2).

Discussion

Louisiana’s version of the U.C.C. provides for the conversion of instruments, in pertinent part:
§ 3-420. Conversion of instrument
(a) An instrument is converted when * * *
(iii) it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.
[[Image here]]
(f) Any action for conversion * * * prescribes in one year.
*498 The facts of this case precisely fit the definition of conversion of an instrument: a bank (Progressive) made payment with respect to numerous instruments (checks) for a person (Wallace) not entitled to enforce the instrument or receive payment (the payee was always HOP, never Wallace). The district court committed no legal error in finding that 10:3^420 governs this case. Specialized Loan Servicing v. January, supra.
As noted, HOP vigorously argues that 10:3^420 does not displace its underlying claims for breach of contract and statutory negligence. In support, it cites R.S. 10:1-103:
§ 1-103 Construction of Uniform Commercial Code to promote its purposes and policies; applicability of supplemental principles of law
|s(a) This Title shall be liberally construed and applied to promote its underlying purposes and policies, which are:
(1) to simplify, clarify, and modernize the law governing commercial transactions;
(2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and
(3)to promote uniformity of the law among the various jurisdictions.
(b) Unless displaced by particular provisions of this Title, the other laws of Louisiana supplement its provisions.
This court and other state courts have consistently held that when the facts satisfy 10:3^420’s definition of conversion of instruments, this statute supplants other general laws regarding personal actions and breach of fiduciary duty claims. Costello v. Citibank (South Dakota) NA, supra; Matthews v. Bank One Corp., 44,818 (La.App. 2 Cir. 10/28/09), 25 So.3d 952; ASP Enters. v. Guillory, supra; Peak Performance Phys. Therapy v. Hibernia Corp., supra; Innovative Hospitality Systs. LLC v. Abe’s Inc., 2010-509 (La.App. 3 Cir. 12/8/10), 52 So.3d 313, 73 UCC Rep.Serv.2d 251. HCP has cited, and this court is aware of, one federal case holding that the plaintiff could pursue an action ex contractu arising from a converted instrument, Webb Carter Const. Co. v. Louisiana Central Bank, supra. However, we note that Webb Carter was rendered in February 1991, before the 1992 enactment of R.S. 10:3-420, and when the predecessor statute, R.S. 10:3-419, did not expressly provide for conversion of instruments.[4] As such, |9we cannot find that, under Webb *499 Carter, general contract law and fiduciary law supersede the specific provision of R.S. 10:3-420 with respect to conversion of instruments. The district court did not err in finding that the claim was for conversion of instruments and that the one-year prescriptive period applies.
HCP also urges that even if the one-year period applies, then the jurisprudential rule of contra non valentem, specifically the “discovery rule,” would apply to suspend prescription “where some cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.” Wimberly v. Gatch, 93-2861 (La.4/11/94), 635 So.2d 206. HCP argues that the ingenuity of Wallace’s scheme made it impossible for HCP to discern, from a simple review of its monthly bank statements, that any conversion was occurring.[5] In support, it cites LaCombe v. Bank One Corp., supra, which applied the discovery rule of contra non valentem to suspend prescription in a case based on conversion of instruments.[6]
In Specialized Loan, supra, the supreme court directly addressed “the res nova issue * * * whether the discovery rule can interrupt the one-year | ^prescriptive period contained in La. R.S. 10:3-420.” After analyzing the text of 10:3-420 and 10:1-103, the court identified the “majority rule,” holding the discovery rule did not suspend prescription, and the “minority rule,” holding it did. Id., pp. 5-6, 119 So.3d 582. The court concluded:
We agree with the majority view that the discovery rule does not apply in U.C.C. conversion cases. The adoption of the majority view fosters uniformity, which is a fundamental objective of the U.C.C. and the La. U.C.C. See La. R.S. 10:1 — 103(a)(3). We reject Specialized’s argument that because other states have a three-year statute of limitations for conversion claims, adoption of the discovery rule would make Louisiana’s conversion more uniform with the other states. The uniformity among the states that should be fostered is the clear-cut rule that the prescriptive period (or statute of limitations) for conversion claims begins to run on the date of the conversion. Having a definite cutoff date for bringing conversion claims promotes the U.C.C.’s purpose of promoting finality, certainty, and swift resolution of commercial disputes. Further, the victims of the conversion are in a much better position to detect the loss, and thus should be responsible for monitoring their accounts and employees to detect if they have been the victim of conversion of funds.
Even without regarding other states’ positions on the matter, our own laws lead to the conclusion that the discovery rule cannot suspend prescription on a conversion claim. First, as we have stated, the discovery rule applies only in “exceptional circumstances.” There is nothing exceptional about conversion cases that would necessitate the application of the discovery rule, because, absent fraud on the part of the defendant, the victim, using some diligence, should be able to quickly discover that he has been the victim of conversion. * * * Second, the La. U.C.C., particularly La. R.S. 10:3-420, governs this claim, and as we have explained, other statutory or *500 jurisprudential rules can only be used to supplement, not supplant, the provisions of the La. U.C.C. The legislature has adopted a strict one-year prescriptive period for conversion claims. Inserting the discovery rule of contra non valen-tem into the statutory one-year prescriptive period of La. R.S. 10:3-420 would result in this jurisprudential rule supplanting this La. U.C.C. provision, which would be in violation of La. R.S. 10:1-103.
Id., at p. 7, 119 So.3d at 590-91 (footnotes omitted).
^J^This discussion effectively abrogates the Third Circuit’s holding in LaCombe v. Bank One Corp., supra, and completely negates any argument that the discovery rule would apply to a conversion claim. HCP suggests that Specialized Loan is factually inapposite and not persuasive, in that the plaintiff therein was not a customer of the bank, but we note that R.S. 10:3-420(f) refers to any action for conversion; it draws no distinction between plaintiffs who are bank customers and those who are merely third parties. Because of the statutory language, we find no basis to distinguish Specialized Loan.
Finally, HCP argues that even if the discovery rule does not apply, the jurisprudence leaves open the prospect that a showing of fraudulent concealment will suspend the one-year prescriptive period of R.S. 10:3-420(f). Specialized Loan, supra at fn. 6[7]; Peak Performance Plvys. Therapy v. Hibernia Corp., supra at 11, 992 So.2d at 533; Costello v. Citibank (South Dakota) NA, supra at 8, 48 So.3d at 1114. HCP contends that the court could not render summary judgment without letting the plaintiff conduct discovery as to whether a bank employee engaged in fraudulent concealment. It submits that at the very least, the case should be reversed and remanded for adequate discovery.
HCP first became aware of the conversions on September 27, 2010, and filed this suit on September 2, 2011. Progressive filed the instant motion for partial summary judgment over eight months later, in May 2012; the hearing was held on August 29, 2012. In response to Progressive’s 112motion showing most of the claim prescribed on its face, HCP offered only Tim Hardin’s affidavit, voicing his speculation that Wallace must have had a confederate in the bank. However, HCP offered no evidence, such as certified police reports, depositions or affidavits of bank auditors, or the deposition or affidavit of any Progressive employee, to support its claim of an inside job. When a motion for summary judgment is made and supported as provided by law, the adverse party “may not rest on the mere allegations or denials of his pleading,” but must “set forth specific facts showing that there is a genuine issue for trial.” La. C.C.P. art. 967 B. The instant showing, based purely on allegation, denial and sharp hypothesis, does not create a genuine issue for trial.
In light of the fact that nearly two years had elapsed since HCP discovered the conversion, nearly one year since it filed suit, and four months since Progressive filed the motion for partial summary judgment, we cannot find that HCP has been denied time to conduct adequate discovery. La. C.C.P. art. 966 C(l). This time frame, though not expansive, is certainly reasonable for the plaintiff to uncover at least a scintilla of evidence, admissible under La. C.C.P. art. 967, of fraudulent collusion. The district court did not err in granting the motion for partial summary *501 judgment. The assignments of error lack merit.

Conclusion

For the reasons expressed, we affirm the grant of partial summary judgment. All costs are to be paid by the appellant, Hardin Compounding Pharmacy LLC.
AFFIRMED.

. Wallace never filed any responsive pleading.

. HCP also cited cases involving commonlaw claims: Bucci v. Wachovia Bank NA, 591 F.Supp.2d 773 (E.D.Pa.2008); Continental Cas. Co. v. American Nat'l Bank & Trust Co. of Chicago, 329 Ill.App.3d 686, 263 Ill.Dec. 592, 768 N.E.2d 352 (2002); Wells v. Bank of New York Co., 181 Misc.2d 574, 694 N.Y.S.2d 570 (1999); Patco Const. Co. v. Peoples’ United Bank, 684 F.3d 197 (1 Cir.2010).

. HCP cited, inter alia, Bank Policy 9(3-7) 11 2: "Checks payable to a business or organization should only be deposited, not cashed (unless cash deposits are also prohibited).” BP 9(3-7) ¶ 8: "Bank employees advised that before cashing a check, they should make sure that the payee is ‘clearly identified’ and told that ‘The best proof would be to compare the signature to the signature card (which would be on file at the bank).’ ” BP 13 (3-11): “The payee must always be the first endorser of a check.” BP 29 (3-27); "Businesses usually deposit their checks, so any check which is payable to a business and which is presented for cash is suspect. * * * Look carefully at every check that comes to your window and report any that appear suspicious to your supervisor.”

. Prior to the 1992 amendment, R.S. 10:3-419 provided:
§ 3-419. Willful refusal to accept or pay; payment on a forgery; innocent representation
(1) When a drawee to whom an instrument is delivered refuses to return it on demand; or when a person to whom an instrument is delivered for payment refuses on demand either to pay it or return it; or when a person pays an instrument on a forged indorsement, he is liable to the true owner.
(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the liability is presumed to be the face amount of the instrument.
(3) Subject to the provisions of this Title concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on- behalf of one who was not the true owner is not liable to the true owner beyond the amount of any proceeds remaining in his hands.
(4) An intermediary bank or payor bank which is not a depository bank is not liable solely by reason of the fact that proceeds of an item indorsed restrictively are not paid or applied consistently with the restrictive in-dorsement of an indorser other than its immediate transferor.

. This court seriously questions whether it was truly "not reasonably knowable,” as comparing HCP's monthly bank statements with its own deposit slips or ledgers would surely have revealed the discrepancy.

. Oddly, LaCombe never once cited R.S. 10:3-420, the statute that establishes the prescriptive period.

. Footnote 6 reads: "As stated, Specialized has not alleged, and the evidence does not point to, any fraud on the part of Capital One.”