# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-874

**STATE OF LOUISIANA, DIVISION OF ADMINISTRATION, OFFICE OF COMMUNITY DEVELOPMENT, DISASTER RECOVERY UNIT**

**VERSUS**

**WALLACE L. STYRON, JR. & KRISTY B. STYRON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-20246
HONORABLE PENELOPE Q. RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John E. Conery, and Van H. Kyzar, Judges.

**AFFIRMED.**

**Mary Catherine Cali**
**John C. Walsh**
**William J. Wilson**
**John C. Conine, Jr.**
**SHOWS, CALI & WALSH**
**Post Office Drawer 4425**
**Baton Rouge, Louisiana  70821**
**(225) 346-1461**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **State of Louisiana, Division of Administration, Office of Community**
    **Development, Disaster Recovery Unit**

**Jennifer Jones**
**Jones Law Firm**
**Post Office Box 1550**
**Cameron, Louisiana  70631**
**(337) 775-5714**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Wallace L. Styron, Jr.**
    **Kristy B. Styron**

**CONERY, Judge.**

The State of Louisiana, Division of Administration, Office of Community Development-Disaster Recovery Unit (OCD-DRU) filed suit against Defendants Wallace L. Styron, Jr. and Kristy B. Styron, claiming that the Styrons breached an Elevation Incentive Agreement and therefore owed OCD-DRU $30,000.00 plus legal interest and attorney fees. Defendants filed a peremptory exception of prescription which was granted by the trial court. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Defendants Wallace and Kristy Styron built and moved into a two-story home constructed on a cement slab in Cameron Parish in 2004. The home was located in an "AE" special flood hazard zone and at the time of its construction, the required elevation was eight feet above mean sea level. The Styrons built their home in excess of the eight foot requirement to an elevation of 9.02 feet above mean sea level.

In September of 2005, Hurricane Rita made landfall in Cameron Parish. The Styrons' home was damaged by the hurricane, but not destroyed. The home suffered significant wind damages, but no flood waters entered the house. In April of 2006, Cameron Parish adopted the Advisory Base Flood Elevation (ABFE) maps which raised the required elevation in the parish from eight to nine feet. At an elevation of 9.02 feet as originally constructed, the Styrons' home was above the level required by the post-Rita ABFE maps adopted by Cameron Parish.

In December 2006, the Styrons went to New Orleans to receive a compensation grant in the amount of $70,704.01 from the Road Home Program to be used to repair their home after damages caused by Hurricane Rita. That grant is not in dispute in this case. While the Styrons were in New Orleans to receive the

Road Home Compensation Grant, the Styrons testified that they spoke with a representative of the Road Home Program who insisted that the Styrons also apply for another grant under the Elevation Incentive Program in the amount of $30,000.00. Mr. Styron testified at the hearing that the representative of the Road Home Program filled the form out for him and "she talked him into this mess." Mr. Styron made it clear to the Road Home representative at the time the form was filled out that his home was already above the required elevation and that he did not intend to elevate his home any further. The Road Home Representative assured Mr. Styron that further elevation was not necessary, and that the money could be used at their discretion. Mrs. Styron was present during this exchange and corroborated her husband's testimony.

When the Styrons received their undisputed Road Home Compensation Grant, they also signed a "Benefits Selection Form" on December 22, 2006. This document supports the Styrons' argument that at all times the OCD-DRU was aware that the Styrons were not eligible for elevation grant funds. The form contains the following language: "*Elevation Allowance: You may be eligible to receive this amount to assist with elevation costs. Our records indicate this property is not eligible for an elevation allowance.*" To the left of that statement is the figure "$0". The form also contains the following language: "*If you are not required to elevate your home, but are eligible to do so, are you planning to elevate your home.*" The box for "No" is checked.

The Styrons testified that they had several conversations with Road Home Representatives in connection with the Elevation Incentive Grant over the next several years, notwithstanding that the form they signed on December 22, 2006 clearly indicated that the Styrons were not eligible to receive the elevation grant.

2

The Styrons testified that they repeatedly told the Road Home Representatives that they were not going to elevate their home as their home already met the Cameron Parish required elevation, and in fact exceeded the required nine feet. The Styrons both testified that Road Home Representatives with whom they communicated continued to insist the Styrons could still accept the elevation grant and use the funds for whatever they needed.

On April 8, 2008, the Styrons received another letter, which is referred to at the hearing on the peremptory exception of prescription as the "interest letter." The letter advised individuals that funds were now available to assist with the elevation costs for their home. The letter does not provide that in order to receive the grant that their home had to be elevated, nor does it state that individuals receiving this letter are not eligible to receive the grant if their home is already at or above the required elevation. The Styrons indicated they were interested in receiving an Elevation Incentive Grant, but did not indicate in their response or at any other time that they were agreeing to elevate their home. The Styrons never received any written or oral instructions from the Road Home Program prior to receiving the Elevation Incentive Grant that in order to receive the Grant, they would have to further elevate their home.

On January 27, 2009, the Styrons signed the Elevation Incentive Agreement and received a grant of $30,000.00. There is a provision in the Elevation Incentive Agreement containing language which provides that by accepting the elevation incentive, the homeowner asserts that when their home was damaged by Hurricane Rita, its elevation was lower than the elevation required under the agreement, in this case nine feet. The Styrons testified, however, that even though they signed the Agreement at the suggestion of the Road Home Representatives (and as Road

Home's own records should have demonstrated), the Styrons never indicated to any Road Home Representative that their home was not at the required elevation prior to or after Hurricane Rita. The documentation submitted into the record from the Road Home Representatives' files confirms this point. Additionally, Mr. Styron testified that at the request of the Road Home Representatives, he sent a copy of his elevation certificate ("maybe five or six times") showing that his home was already above the required elevation. Indeed, the certificate from Cameron Parish in the record corroborates the Styrons' testimony.

On February 7, 2019, more than ten years after the Styrons signed the Elevation Incentive Agreement, the OCD-DRU filed suit seeking the return of the $30,000 Elevation Incentive Grant, plus attorney fees and costs. The Styrons then filed a peremptory exception of prescription.[1] OCD-DRU filed an opposition to the Styrons' exception of prescription and contended that the Styrons had not met their burden of proof that the claim by OCD-DRU was prescribed. In the alternative, OCD-DRU argued that the doctrine of *contra non valentem* applied to suspend the running of prescription on the Elevation Incentive Agreement.

Both parties agreed that the prescriptive period for a breach of contract claim is ten years pursuant to La.Civ.Code art. 3599. Prescription begins to accrue on a breach of contract claim when the contract is breached. *Deshotels v. Fruge*, 364 So.2d 258 (La.App. 3 Cir. 1978).

The Styrons argued that prescription began to run on January 27, 2009 when they received the elevation incentive funds and signed the Elevation Incentive

---

[1] The Styrons also filed an exception of res judicata in addition to the exception of prescription. However, during the hearing, counsel for the Styrons indicated that she informed opposing counsel via email that the only exception before the court at the August 15, 2019 hearing was the exception of prescription.

4

Agreement. The Styrons further maintained that their home was already above the required ABFE elevation, and they had no intention of elevating their home further. They informed OCD-DRU of that fact on many occasions such that any alleged breach of contract would have occurred on January 27, 2009, the date they signed the Elevation Incentive Agreement and received the $30,000.00 Elevation Incentive Grant. The OCD-DRU suit was filed on February 7, 2019, more than ten years from the alleged breach of the Elevation Incentive Agreement on January 27, 2009. The OCD-DRU conceded at the hearing that the attachments were part of the pleadings, and that the contract at issue, which was attached to the pleadings, was dated January 27, 2009.

Therefore the OCD-DRU petition was prescribed on its face, and the burden of proof shifted to OCD-DRU to show that their claim was not prescribed by virtue of their alternatively plead claim of *contra non valentem*. OCD-DRU did not appeal the ruling of the trial court finding that the burden of proof on the issue of prescription had shifted from the Styrons to OCD-DRU.

At the hearing, OCD-DRU had urged that the application of the doctrine of *contra non valentem* suspended the running of prescription, claiming that OCD-DRU did not receive notice of the breach of the Elevation Incentive Agreement until September 23, 2013, when they received the "Road Home Compliance and Monitoring Form" from the Styrons. The Elevation Incentive Grant gave the homeowners three years to elevate their homes, so OCD-DRU argued that the contract was not breached until January 27, 2012, three years after it was signed on January 27, 2009. Hence their suit was timely.

At the close of the hearing, the trial court took the matter under advisement, and subsequently issued Written Reasons for Judgment on September 18, 2019. The

trial court found that OCD-DRU's petition was prescribed on its face, as the Styrons signed the Elevation Incentive Agreement at issue on January 27, 2009, and suit was filed by OCD-DRU on February 7, 2019. Based on the evidence and testimony presented at the hearing, the trial court granted the Styrons' exception of prescription and dismissed the claim of OCD-DRU at their cost in a judgment dated September 27, 2019. It is from this judgment that OCD-DRU now timely appeals.

### ASSIGNMENTS OF ERROR

The OCD-DRU has urged four assignments of error on appeal, which state as follows:

1. The Trial Court manifestly erred in finding that prescription was not interrupted or suspended under the doctrine of *Contra Non Valentem*.

2. The Trial Court manifestly erred in finding that Mr. and Mrs. Styron's conduct did not prevent OCD – DRU from availing itself of its cause of action.

3. The Trial Court manifestly erred in finding that OCD – DRU knew or reasonably could have known of the breach of the Elevation Incentive Agreement by Mr. and Mrs. Styron prior to September 23, 2013.

4. The Trial Court manifestly erred in basing its finding upon the credibility of Mr. and Mrs. Styron.

We will consider all the Assignments of Error together since all relate to the same facts and evidence presented.

## LAW AND DISCUSSION

### Standard of Review

A panel of this court in *Arton v. Tedesco*, 14-1281, p. 3 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043 (citations omitted), succinctly stated the standard of review applicable to an exception of prescription:

> The standard of review of a grant of an exception of prescription is determined by whether evidence was adduced at the hearing of the exception. If evidence was adduced, the standard of review is manifest error; if no evidence was adduced, the judgment is reviewed simply to determine whether the trial court's decision was legally correct. The party pleading the exception of prescription bears the burden of proof unless it is apparent on the face of the pleadings that the claim is prescribed, in which case the plaintiff must prove that it is not.

In this case, the trial judge heard evidence, and made factual findings and assessed the credibility of the witnesses. Thus, in this case, the standard of review is manifest error. *See Stevenson v. Progressive Sec. Ins. Co.*, 19-637 (La. 4/3/20), _ So.3d _;[2] *Lee v. Amer. Supply Co.*, 18-893 (La.App. 3 Cir. 11/6/19), 283 So.3d 605.

### The Doctrine of Contra Non Valentem

In this case, the trial court found on the face of the pleadings that the claim of OCD-DRU was prescribed. Thus the burden of proof shifted to OCD-DRU to show that their claim was not prescribed. Louisiana Civil Code Article 3467 provides that "[p]rescription runs against all persons unless exception is established by legislation." Where legislation is silent, the Louisiana Supreme Court in *Wimberly v. Gatch*, 93-2361 (La. 4/11/94), 635 So.2d 206, 211, clarified that three theories may be used by a plaintiff "to establish that prescription has not run, to wit, suspension, interruption, or renunciation." As did the plaintiffs in *Wimberly*, OCD-DRU relies on the

---

[2] 2020 WL 1671565

suspensive theory of *contra non valentem agere nulla currit praescripto,* which means, "'prescription does not run against a party unable to act.'" *Id.*

The courts have created the jurisprudential doctrine of *contra non valentem* as an exception to the applicable statutory prescriptive period. *Wimberly*, 635 So.2d 206. "The doctrine of contra non valentem applies as an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it has accrue[d]." *Specialized Loan Serv., LLC v. January*, 12-2668, p. 5 (La. 6/28/13), 119 So.3d 582, 585.

The Louisiana Supreme Court in *Specialized Loan*, 119 So.3d at 585 (citing *Wimberly*, 635 So.2d 206) set forth the four instances where the doctrine of *contra non valentem* can apply as follows:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's actions; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

However, the doctrine of *contra non valentem* only applies in "exceptional circumstances." La.Civ.Code art. 3467, Official Revision Comment (d). "The doctrine of *contra non valentem* distinguishes between personal disabilities of the plaintiff (which do *not* prevent prescription from running) and an inability to bring suit for some cause foreign to the person of the plaintiff (which suspends its running)." *Wimberly*, 635 So.2d at 212. "The equitable doctrine is, in part, but an application of the long-established principle of law that one should not be able to take advantage of one's own wrongful act." *Id.* (citing *Nathan v. Carter*, 372 So.2d 560 (La.1979)).

"The equitable nature of the circumstances in each individual case has determined the applicability of the doctrine." *Nathan*, 372 So.2d at 563.

In its assignments of error one, two, and three, OCD-DRU admits that its claim was prescribed on its face, thus shifting the burden of proof to OCD-DRU. OCD-DRU indicated in its briefing to this court only the third and fourth categories of *contra non valentem* "need be addressed in this Appeal." The third category of the doctrine applies "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action …." *Whitnell v. Menville*, 540 So.2d 304, 308 (La.1989). Category four applies "where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Specialized Loan*, 119 So.3d at 585. Category four is known as the discovery rule, which provides that prescription begins to run on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987). Therefore, "prescription does not run against one who is ignorant of the facts upon which his claim is based, as long as such ignorance is not willful, negligent or unreasonable." *In Re Med. Review Panel of Howard*, 573 So.2d 472, 474 (La.1991).

In its brief to this court, OCD-DRU argues:

**a)** Mr. and Mrs. Styron prevented OCD-DRU from knowing that the home on the Property was at or above the elevations required by the Elevation Incentive Agreement prior to Hurricane Rita and that they had no intent to elevate the home on the Property, and Mr. and Mrs. Styron even went so far as to acknowledge the complete opposite by executing the Elevation Incentive Agreement as written; and **b)** OCD-DRU did not know or reasonably could not have known that Mr. and Mrs. Styron's home met the elevation requirements of the Elevation Incentive Agreement at the time of its execution and/or that Mr. and Mrs. Styron had no intention of fulfilling their contractual obligations set forth in the Elevation Incentive Agreement as written.

Therefore, OCD-DRU argues under categories three and four of the doctrine of *contra non valentem* that prescription was interrupted by the actions of the Styrons, and the trial court was manifestly erroneous in rendering its judgment to the contrary.

In order to determine the facts which pertain to a determination of the application of the doctrine of *contra non valentem*, it is necessary to first address OCD-DRU's assignment of error four, in which OCD-DRU claims the trial court committed manifest error in basing its finding of prescription on the credibility of the Styrons. For the following reasons, we find that the trial court was not manifestly erroneous in its ruling, based not only on the documentation submitted into evidence, but the distinction between the weight the trial court placed on the testimony of the Styrons as opposed to Mr. Jeff Haley, Chief Operating Officer for the OCD-DRU, the only witness called on its behalf.

***Testimony of Mr. Jeff Haley***

Mr. Haley testified about the workings of the Road Home Program and more specifically the Elevation Incentive Grants and its purpose in the scheme of the Road Home Program. He claimed the Grant was specifically designed to encourage people to elevate their homes. He also testified about the stages of the Road Home Program and the training and record keeping involved in distributing some 32,000 Elevation Incentive Grants.

In its written reasons for judgment, the trial court discussed the testimony of Mr. Haley and stated:

> Mr. Haley testified that OCD-DRU did not have the funds to go to each home to determine if they were eligible, so they relied on self-certification contained in the Elevation Incentive Agreement, attached to the petition.... He also testified that if the Styrons' home was already elevated, then the Road Home Representatives would have been trained

and instructed to determine that the home was not eligible for the elevation incentive grant.

The trial court then referenced the Benefits Selection Form that was signed by the Styrons when they received their original $70,704.01 Road Home Compensation grant, not in dispute in this case. The form is dated December 2, 2006 and signed by the Styrons dated December 22, 2006. As previously indicated infra, and as found by the trial court, this document clearly indicates:

> "*Elevation Allowance: You may be eligible to receive this amount to assist you with elevation costs.* **Our records indicate this property is not eligible for an elevation allowance**.*"* To the left of this statement is the figure "$0." The December 2006 form also states, "*If you are **not** required to elevate your home, but are eligible to do so, are you planning to elevate your home*." The box for "[N]o" is checked.

(Bold added.) OCD-DRU nevertheless argues that it was the Styrons' conduct that kept it from availing itself of its cause of action as there was no way that it could have known of the breach of the Elevation Agreement in connection with the $30,000.00 Elevation Incentive Grant at issue in this case prior to September 23, 2013, when OCD-DRU received notice that the Styrons had no intention of elevating their home.

Based on the record, including the extensive documentation submitted into evidence, the trial court correctly found that from the beginning of the Road Home Program process, and especially on December 22, 2006, when the Styrons signed and received their initial Compensation Grant in the amount of $70,704.01, the Road Home Representatives knew that the Styron home was above the required elevation levels and that the Styrons had no intention of elevating their home. The documents in evidence clearly so state.

The trial court in its written reasons also found credible the Styrons' testimony "that the Road Home Representatives maintained that they were eligible for the

11

funds and did not have to use the funds for elevation purposes." Mr. Styron's testimony, also cited in the trial court's written reasons, further supports the conclusion that the Styrons never concealed the elevation of their home or their intent not to elevate it further. The trial court explained that Mr. Styron testified:

> that since his home was a two-story home on a cement slab, he did not think he could elevate his home. He testified that a "lady in New Orleans made me apply for this – she filled it out for me…she talked me into this mess." He maintained that he told the lady in New Orleans as well as other representatives that he was not going to elevate.

The trial court indicated that while neither of the Styrons could remember the "specific names of the Road Home Representatives or dates that these conversations took place[,]" more than ten (10) years had elapsed since the discussions with the Road Home Representatives occurred. The trial court specifically found both the Styrons to be credible and that the documentary evidence supported their testimony:

> Since [OCD-DRU] had the burden of proof and had the names of each representative that worked on the Styrons' case, they could have easily subpoenaed one or more of them to testify at the hearing to contradict the Styrons. In fact, Mr. Haley testified on cross-examination that none of the case workers were even contacted in this case. Further, Mr. Haley testified that all telephone calls were documented by Microsoft JIRA. However, OCD-DRU did not introduce any evidence of the telephone calls between the Styrons and the Road Home Representatives. Mr. Haley also stated that the program relies on FEMA data and that they were receiving new data on a monthly basis. There is nothing in the record to reflect that FEMA provided inaccurate information to OCD-DRU regarding the Styrons' residence.

We find based on the testimony and evidence submitted that the trial court's decision was not manifestly erroneous. We affirm the trial court's ruling that prescription was not interrupted or suspended under the doctrine of *contra non valentem*.

Further, as the trial court specifically found the testimony of the Styrons credible, we find no conduct on the part of the Styrons that prevented OCD-DRU

12

from availing itself of its cause of action under category three of the doctrine of *contra non valentem*.

There is nothing in the record that demonstrates that the Styrons withheld any information from OCD-DRU that would implicate category three of the doctrine of *contra non valentem* that applies when the defendant engages in conduct which prevents the plaintiff from availing itself of its judicial remedies. *Whitnell*, 540 So.2d 304.

In assignment of error three, OCD-DRU claims the trial court erred in finding that it knew or should have reasonably known of the Styrons' alleged breach of the Elevation Incentive Agreement prior to September 23, 2013. This argument relates to the fourth category of *contra non valentem*, which prevents the accrual of prescription against a plaintiff who is ignorant of the facts upon which his or her claim is based, as long as that ignorance is not willful, negligent, or unreasonable. *See Howard*, 573 So.2d 472.

Ms. Kara Bonsall, an employee with the Cameron Parish Police Jury, who is the coastal zone administrator and also a certified floodplain manager, testified at the hearing. Ms. Bonsall testified that she reviews all building permits from start of construction to the final permit of occupancy, which is issued after her office receives the final elevation certificate. The receipt of the elevation certificate is required to show that the residence meets the minimum requirements of the Police Jury's flood damage prevention ordinance. The parties stipulated to a letter from Ms. Bonsall to counsel for the Styrons dated July 24, 2019, which was received into evidence. The letter provided that at the time the Styrons' home was built in 2004, the elevation requirement was 8 feet. When the ABFE maps were issued after Hurricane Rita, the elevation requirement became 9 feet. The elevation of the Styron

13

home was 9.02 feet, and the level of the elevation of the Styron home, as indicated by the Cameron Parish elevation certificate, has always exceeded all pertinent elevation requirements.

Ms. Bonsall further testified that her office received numerous phone calls from the Road Home Representatives inquiring about elevation levels in a particular area.

The trial court noted:

> Ms. Kara Bonsall, an employee with the Cameron Parish Police Jury, testified that the permit department received many phone calls from the Road Home Program requesting information for their files. If called by the Road Home Program, she could have advised the designated flood zone of any particular residence in Cameron Parish and did provide that information on a daily basis. Also, her department housed elevation certificates and she or her staff could have provided an elevation certificate upon request.

The Styrons could have also provided their elevation certificate, but were not asked to do so until sometime in August 2013.

The trial court found in its written reasons that information pertaining to the elevation requirements of the Styrons' home was readily available to OCD-DRU:

> The Styrons testified that they had built their residence in 2004 and it was built to the elevation requirements of FEMA at that time. The Styrons' property located at 138 Beau Clos Road, is located in an AE Flood Zone … at the time of construction, the elevation requirements in an AE Flood Zone was eight (8) feet above median sea level. After Hurricane Rita, the ABFE maps required AE Flood Zones to be elevated to nine (9) feet above median sea level. The Styrons' home is elevated to 9.02 feet. The Elevation Certificate is dated July 6, 2004. At all times, the Styrons' home was elevated above the minimum requirements of FEMA. This information was not hidden from the Road Home Program. Since the home always met the minimum FBE and ABFE, and the Styrons testified that they had no intention of elevating their home any further, the court finds that the breach of contract occurred on January 27, 2009. The Plaintiff has failed to carry their burden that prescription was suspended, interrupted or renounced after January 27, 2009. Therefore, the plaintiff had until January 27, 2019, to file its claim. The filing of the petition is untimely.

## CONCLUSION

We find that the trial court did not commit manifest error in failing to apply the doctrine of *contra non valentem* to the facts of this case. We therefore affirm in its entirety the trial court's judgment of September 27, 2019, granting Wallace L. Styron, Jr. and Kristy B. Styron's peremptory exception of prescription and dismissing with prejudice all the claims of the State of Louisiana, Division of Administration, Office of Community Development, Disaster Recovery Unit at its cost.

**AFFIRMED.**