Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,258-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SARAH JOHNSON, JUANITA     Plaintiffs-Appellants
LEICHMAN, AND TONETTE
DIXON

versus

RUSTON LOUISIANA HOSPITAL     Defendants
CO., LLC D/B/A NORTHERN
LOUISIANA MEDICAL CENTER,
AND ITS EMPLOYEES, AND DR.
GREGG KEITH ARENA, JOINTLY
AND INSOLIDO

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 60,707

Honorable Bruce E. Hampton, Judge

* * * * *

DAVIS LAW OFFICE, LLC     Counsel for Appellants
By: S.P. Davis, Sr.

NELSON, ZENTNER, SARTOR &     Counsel for Defendant-
SNELLINGS, LLC     Appellee, Dr. Gregg
By: F. Williams Sartor, Jr.     Keith Arena

* * * * *

Before MOORE, PITMAN, STONE,
STEPHENS, and HUNTER, JJ.

STONE, J., dissents with written reasons.

HUNTER, J., dissents with written reasons.

**PITMAN, J**.

In this medical malpractice case, Plaintiffs Sarah Johnson, Juanita Leichman and Tonette Dixon appeal a judgment of the trial court sustaining a peremptory exception of prescription and dismissing Defendant Dr. Gregg Keith Arena[1] from the lawsuit. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On January 7, 2015, Plaintiffs' father, Tommy McNeal, was admitted to Ruston Louisiana Hospital Co., LLC, d/b/a Northern Louisiana Medical Center, ("the Hospital"), for rectal bleeding. He had no signs of heart problems at the time of admission. Over the next two days, McNeal's blood pressure severely destabilized, and he began experiencing bloody, dark stools and blood clots. His treating physician, Dr. Derrick McClusky, recommended that he undergo colectomy surgery. McNeal was sedated by Dr. Arena, the anesthesiologist and, thereafter, suffered a heart attack and died. The causes of death listed on his death certificate were acute cardiac event, lethal cardiac arrhythmia and "gastrointestinal bleeding anal renal failure." Plaintiffs stated that Dr. McClusky informed them that their father had been sedated, and then he died. He did not tell them that the anesthesia caused their father's death, and nothing on the death certificate indicated that the cause of death was administration of anesthesia.

On January 4, 2016, Plaintiffs filed a petition under the Louisiana Medical Malpractice Act ("LMMA") for medical malpractice review based on the care and treatment provided by the Hospital and its employees. The

_____

[1] Dr. Arena's first name is spelled Gregg in some parts of the record and Greg in others.

original complaint, paragraph 6 states that Dr. McClusky "advised them on January 9, 2015, that their father had a heart attack after being administered anesthesia medication in preparation for his surgery." Paragraph 7 alleges that their father died as a result of the substandard conduct and medical malpractice on the part of the Hospital and its employees, "including but not limited to administering the wrong and/or improper dosage of anesthesia in preparation for their father['s] surgery." Paragraph 8 alleges that the Hospital and its employees breached the standard of care by failing to timely and appropriately determine the anesthesia medication and dosage to be administered and failing to ensure that the anesthesiologist was properly trained and competent to administer the anesthesia based on their father's medical signs, symptoms and status. Dr. Arena was not named as a defendant in the original complaint. He is not a Hospital employee and was self-employed.

Plaintiffs allegedly only became aware that Dr. Arena was the anesthesiologist who administered their father's sedation after the Hospital answered discovery. On October 12, 2017, allegedly within a year of "discovery" and within three years from the date of their father's death, Plaintiffs filed an amended complaint naming Dr. Arena in their request for review by the medical review panel ("the Panel"). They claimed that until then, they did not know that Dr. Arena was their father's anesthesiologist, did not know that the anesthesia had anything to do with his death and had only just discovered that he was not an employee of the Hospital.

The Panel convened in June and July 2019 and reviewed Plaintiffs' allegations against the Hospital and Dr. Arena. On July 16, 2019, it rendered a unanimous opinion finding that the evidence did not support the

conclusion that the Hospital violated the standard of care as charged in the complaint. With regard to Dr. Arena:

> [T]he panel (2-1) found that the evidence does not support a conclusion that Gregg K. Arena, M.D. . . . failed to comply with acceptable standard of care for an anesthesiologist in the care and treatment of Tommy McNeal, a very sick patient who presented to the Emergency Medicine Department with multiple medical problems and co-morbidities, including hypertension and renal issues [.]

Dr. Son Manh Dang, the physician who dissented, found that Dr. Arena failed to comply with the acceptable standard of care for an anesthesiologist in regard to McNeal's care and that the deviation of care was a factor in the resultant damages. The opinion was mailed to counsel on August 8, 2019, and was received on August 12, 2019.

On November 6, 2019, within 90 days of the Panel's opinion, Plaintiffs filed suit against the Hospital and its employees and also against Dr. Arena. They alleged that the defendants were liable to them jointly and in solido for the death of their father. The allegations against Dr. Arena were (1) that he administered and/or ordered the anesthesia for their father prior to the fatal heart attack and that the death was preventable and avoidable; (2) that he negligently deviated from the standard of care in his treatment by administering the drug Propofol, which contributed to their father's heart attack and death; and (3) that he should have considered their father's hemodynamically compromised condition and administered an alternative anesthesia such as Etomidate, which would not have exacerbated or fatally increased their father's hypotension. These allegations echo the opinion of Dr. Dang from the Panel. The petition further alleges that the Hospital and Dr. Arena are liable jointly and in solido, but the prayer requested judgment against the Hospital alone.

3

The Hospital filed an answer on December 9, 2019, and denied the allegations of the petition relevant to Dr. Arena's administration of the drug Propofol (found in paragraph 15 of the petition). The Hospital also further raised the affirmative defense of third-party fault in paragraph 18 that:

> [t]o the extent that Mr. McNeal was injured or died as a result of the fault of a third party, defendant is not responsible for the actions of said third party and pleads herein with specificity the affirmative defense of Third Party Fault.

On December 23, 2019, Dr. Arena filed his own answer in response to the petition and stated that at all times he was a "qualified healthcare provider" as defined by the LMMA and that he was entitled to all defenses under that act, including a cap of liability of $100,000. He also alleged that the opinion of the Panel does not support the allegation that he breached the standard of care. Dr. Arena is represented by different counsel from the Hospital.

The Hospital filed a motion for summary judgment on May 28, 2020, alleging that Plaintiffs failed to provide an expert opinion to establish essential elements of their cause of action, i.e., the standard of care, any conduct by the Hospital that was a breach of that standard of care and that any breach of the standard of care by the Hospital actually caused the alleged damages. For these reasons, the Hospital argued that Plaintiffs would be unable to carry their burden of proof at trial, and summary judgment was warranted.

The Hospital's summary judgment was granted on July 13, 2020, and it was dismissed from the lawsuit with prejudice. This judgment was not appealed by Plaintiffs.

On September 17, 2020, Dr. Arena filed a peremptory exception of prescription claiming that although Plaintiffs had filed a request for a medical review panel against the Hospital on January 4, 2016, they did not amend the complaint to name him until October 12, 2017, two years and ten months after their father's death. Dr. Arena argued that on May 26, 2020, when the Hospital was dismissed from the lawsuit by summary judgment, there was no longer a timely-named defendant with whom he would be a joint or solidary obligor. He argued that prescription was neither suspended nor interrupted by the original complaint for review naming only the Hospital as a defendant. He and the Hospital are not joint or solidary obligors; thus, the filing of the complaint against the Hospital did not interrupt or suspend prescription as to him, and the claim against him must also be dismissed.

On November 30, 2020, Plaintiffs filed a request for leave to amend their petition and, in the request, amended paragraph 7 to reflect that it was not until late September 2017 that they learned Dr. Arena was the anesthesiologist in charge of their father's sedation and that he was not an employee of the Hospital. They also alleged that they had no reason to know at that time that the anesthesia had anything to do with his death. They alleged that the original complaint was filed against the Hospital; but as soon as they realized Dr. Arena was involved, they amended their complaint to include him in the scope of the Panel and that this was done within the three-year period provided by law. Plaintiffs also asked for leave to amend paragraphs 15 and 16 of the petition and also to amend the prayer for judgment to include Dr. Arena.

In addition to the request for leave to amend the petition, Plaintiffs submitted to the trial court their affidavit stating that they amended their complaint to the Panel concerning Dr. Arena as soon as they discovered he was the anesthesiologist responsible for their father's sedation. They also stated that until May 21, 2020, they were unaware that Dr. Arena was not an employee of the Hospital but, instead, is self-employed and that they only came to this realization when they received responses to their discovery requests.[2]

A hearing was held on Dr. Arena's peremptory exception of prescription, and the trial court sustained the objection and rendered reasons for judgment, finding that prescription had not been suspended or interrupted by the filing of the request for medical review panel against the Hospital because it and Dr. Arena were not solidary obligors, and the Hospital had been dismissed.

The trial court also addressed Plaintiffs' argument that prescription only runs upon the discovery of the wrongdoing. It noted that it was clear from Plaintiffs' own allegations in the complaint to the Panel that they actually were aware of the issues involving anesthesia and of the alleged connection between the issues with the anesthesia and their father's death.

The trial court's reasons for judgment indicate that the amended complaint submitted to the Panel adding Dr. Arena was filed more than two years and nine months after the date of the alleged malpractice, which was clearly outside the one-year prescriptive period of the discovery of the

---

[2] The timing of Plaintiffs' discovery that Dr. Arena is self-employed, rather than being a Hospital employee, is unclear. In briefs, Plaintiffs claim both that they discovered his self-employed status while the Panel was still sitting, hence the amendment to name him in October 2017 and, later, that they discovered he was self-employed in May 2020.

injury-causing malpractice.  For that reason, the trial court found that the claim against Dr. Arena had prescribed and dismissed him from the suit.

Plaintiffs appeal the judgment sustaining Dr. Arena's exception of prescription and dismissing all their claims against him.

**DISCUSSION**

*Prescription*

Plaintiffs argue that the trial court erred in sustaining Dr. Arena's exception of prescription because they timely sought review by the Panel against the Hospital within a year of the date of their father's death and amended their complaint to add Dr. Arena approximately one month after they discovered that he was the anesthesiologist who administered the drugs to their father and that he was not an employee of the Hospital, which was within the three-year period set forth in La. R.S. 9:5628.  They contend that they had no reason to believe Dr. Arena was not the Hospital's employee. Further, they argue that because of their medical naïveté, they did not understand that the anesthesia was the cause of their father's death.  This, they contend, is the reason prescription did not begin to run until they discovered, through the Hospital's submission to the Panel, that Dr. Arena was the person whose treatment caused their father's death.  Plaintiffs also argue that the trial court erred in sustaining the exception of prescription after it allegedly ignored the amended petition and affidavit it had allowed them to file.

Dr. Arena asserts that the trial court did not err in sustaining his exception of prescription because the statute requires that an action for medical malpractice must be filed within one year from the date of the alleged act of negligence or within one year from the date of discovery of

7

the alleged act of negligence. He points out that the timely filing of a complaint against a qualified healthcare provider suspends the running of prescription against all joint and solidary obligors and all joint tortfeasors to the same extent as prescription is suspended against the party subject to the request for review. However, because the original complaint filed under the LMMA alleged that the Hospital and he were joint and solidary obligors, and the Hospital was dismissed from the lawsuit by the uncontested summary judgment, Dr. Arena argues that the complaint against the Hospital did not suspend prescription as to him.

Dr. Arena states that Plaintiffs contend they only discovered the claims against him after reading the Hospital's panel submission, but he argues that such reliance of discovery of his name and self-employed status is misplaced. He contends that Plaintiffs had constructive knowledge, if not actual knowledge, of sufficient facts to excite attention and put them on call for inquiry before filing the original complaint. He claims that the only issue was whether he was an employee of the Hospital, and that was a question which could have easily been answered within the relevant time period. For these reasons, he asserts that Plaintiffs' amendment of the complaint, which was filed two years and ten months after the date of death, could not be deemed timely and must have prescribed.

Prescription in a medical malpractice case is controlled by La. R.S. 9:5628, which provides, in pertinent part, as follows:

A.  **No action** for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care **shall be**

8

**brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect.** (Emphasis added.)

Suspension of the prescriptive period is provided for in La. R.S. 40:1231.8(A)(2)(a), which states in pertinent part as follows:

(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part … **The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review[.]** (Emphasis added.)

La. R.S. 40:1231.1(G) provides:

G. Notwithstanding the provisions of Subsection D of this Section, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1231.8(A)(2)(a).

Typically, when prescription is raised by peremptory exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review. *Specialized Loan Servicing, LLC v. Jan.*, 12-2668 (La. 6/28/13), 119 So. 3d 582; *Med. Rev. Panel for Lane v. Nexion Health at Minden, Inc.*, 53,901 (La. App. 2 Cir. 8/11/21), 326 So. 3d 340, *writ denied sub nom. Med. Rev. Panel Proc. for Lane v. Nexion Health at Minden, Inc.*, 21-01410 (La. 11/23/21), 328 So. 3d 82. However, when the sole issue before the court of appeal is the proper interpretation of the statutes pertaining to prescription under the LMMA, the

case presents a question of law, which is reviewed by this court under a de novo standard of review. *Specialized Loan Servicing, LLC v. Jan.*, *supra*. A de novo review means the court will render judgment after its consideration of the legislative provision at issue, the law and the record, without deference to the legal conclusions of the tribunals below. *Id.*

La. R.S. 9:5628(A) provides two periods for filing a malpractice action—either one year from the date of the alleged act, omission or neglect, or one year from the date of discovery of the act, omission or neglect, provided that no more than three years have elapsed from the date of the alleged act, omission or neglect. The second period is a codification of the fourth category of *contra non valentem* that occurs where the cause of action is not known or reasonably knowable by the plaintiff and when the damages are not immediately apparent upon commission of the alleged malpractice. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 502; *Heirs of Jackson v. O'Donovan*, 44,314 (La. App. 2 Cir. 5/13/09), 12 So. 3d 435.

The plaintiff's ignorance of his cause of action cannot be attributable to his own willfulness or neglect, as a plaintiff is deemed to know what he could have learned by reasonable diligence. *Renfroe v. State ex rel. Dep't. of Transp. and Dev.*, 01-1646 (La. 2/26/02), 809 So. 2d 947; *Edwards v. Alexander*, 42,000 (La. App. 2 Cir. 6/6/07), 960 So. 2d 336, *writ denied*, 07-1317 (La. 9/28/07), 964 So. 2d 371.

When Plaintiffs originally filed the complaint for review under the LMMA, they named only the Hospital and its employees as defendants in the case. The complaint specifically alleged that the administration of the anesthesia, the amount and the type fell below the applicable standard of care and were related to the death. The allegations in the complaint also

10

included that the Hospital fell below the standard of care regarding the anesthesiologist's training. These allegations were made without the anesthesiologist being named. That application for review was timely filed within a year of the date of their father's death.

Two years and ten months later, Plaintiffs amended their complaint to the Panel because they suddenly "discovered" Dr. Arena's name and employment status. This discovery is not the "discovery" envisioned by the legislature in the second prescriptive period provided in La. R.S. 9:5628. That statute gives parties the time from the discovery of "the act, omission or neglect," not the name of the person who performed the act or whether he was an employee of the hospital. Those are facts which could have been discovered with reasonable diligence. Dr. Arena's name was certainly included in the medical records from the date of surgery and death. Further, the fact that he is self-employed is also easily discoverable, and Plaintiffs' failure to discover these facts is unreasonable.

For the foregoing reasons, the complaint against Dr. Arena, filed more than two years and ten months after the date of the alleged act of medical malpractice, has prescribed on its face and this assignment of error is without merit.

*Amendment of the Petition*

Plaintiffs argue that the trial court erred in "ignoring" that it allowed them to amend their petition after the answer and to file an affidavit stating various facts regarding the timing of their discovery of Dr. Arena's involvement in the case and his status as a self-employed physician. They argue that the facts, as alleged in the petition and affidavit, prove that their suit against him was filed within the three-year period of La. R.S. 9:5628

11

and had not prescribed.  They also argue that the trial court incorrectly stated that it had denied them leave to file the amended petition.  In its reasons for judgment, the trial court included a footnote concerning the amendment and stated that "[e]ven if the amendment were allowed . . . Dr. Arena carried his burden of proof herein," and the trial court would grant the exception of prescription.

La. C.C.P. art. 931 concerns evidence on the trial of peremptory exceptions and states, in part, as follows:

> On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.

It does not matter that the trial court gave Plaintiffs leave to amend their petition and attach an affidavit whereby they state the "facts" as they know them.  The trial court considered the timing of the original complaint, its amendment to add Dr. Arena and the allegations concerning the involvement of the unnamed anesthesiologist in the original complaint; and it decided that the action had prescribed.

For the foregoing reasons, this assignment of error is without merit.

## CONCLUSION

The judgment of the trial court sustaining the peremptory exception of prescription in favor of Dr. Gregg Keith Arena and against Plaintiffs Sarah Johnson, Juanita Leichman and Tonette Dixon, is affirmed.  Costs of this appeal are assessed to Plaintiffs.

**AFFIRMED.**

**STONE, J., dissenting.**

I respectfully dissent from the majority opinion.

This court should follow *In re Benjamin*, 2014-192 (La. App. 5 Cir. 11/25/14), 165 So. 3d 161, *writ denied*, 2015-0112 (La. 4/10/15), 163 So. 3d 814, which held that a medical review panel complaint that identified a defendant by first name only suspended prescription as to that defendant. Pursuant to *In re Benjamin*, I would hold that the original medical review panel complaint was sufficient to suspend prescription as to Dr. Arena. While that original complaint only named NLMC and its "employees" as defendants, it clearly identified the anesthesiologist involved in the decedent's treatment as a negligent actor. This should be sufficient to suspend prescription against the treating anesthesiologist. The fact that Dr. Arena was an independent contractor rather than an employee should not be allowed to override the clear identification of the treating anesthesiologist in the original complaint.

Accordingly, the exception of prescription should have been **DENIED**.

**HUNTER, J., dissenting**.

The record shows the plaintiffs amended their complaint to the Patient's Compensation Fund (PCF) to add Dr. Arena as a party defendant during the time period when prescription was interrupted. Thus, I respectfully dissent and would reverse the trial court's judgment.

The timely filing of a request for review of a claim against a qualified healthcare provider with the PCF shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, both qualified and unqualified under the Medical Malpractice Act, to the same extent as prescription is suspended against the party subject to the request for review. La. R.S. 40:1231.8(A)(2)(a).

The rules of prescription are designed to prevent old and stale claims from being prosecuted. *Wells v. Zadeck*, 2011-1232 (La. 3/30/12), 89 So. 3d 1145. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against every person who might have caused his injury. *Guitreau v. Kucharchuk*, 1999-2570 (La. 5/16/00), 763 So. 2d 575.

The situation in this case is similar to the facts of *In re Benjamin*, 2014-192 (La. App. 5 Cir. 11/25/14), 165 So. 3d 161, *writ denied*, 2015-0142 (La. 4/10/15), 163 So. 3d 814, in which the court found the pending MRP review suspended prescription as to a nurse who was only partially identified in Benjamin's original PCF complaint. Benjamin then amended his complaint after learning the nurse's full name through discovery. Similarly, while the MRP review was pending in this case, plaintiffs filed an amended PCF complaint to identify the anesthesiologist referred to in their original complaint.

1

The record evidences the plaintiffs' malpractice claim against Dr. Arena arises out of the conduct, transaction or occurrence set forth in plaintiffs' original, timely filed PCF complaint. Dr. Arena had the opportunity to present evidence to the MRP in response to plaintiffs' complaint and he was named as a defendant in plaintiffs' timely filed petition following the issuance of the MRP's opinion. Thus, this is not a situation in which a defendant is facing liability for stale claims. Nor has there been a showing Dr. Arena would be prejudiced by a lack of notice of plaintiffs' claims, since their original complaint alleged negligent application of anesthesia and Dr. Arena provided such services on behalf of the hospital.

The record further conveys the plaintiffs timely filed their original PCF complaint against the hospital and its employees. Although Dr. Arena is not an "employee" of the hospital, there was a contractual relationship between the defendants by which Dr. Arena provided anesthesia services to patients of the hospital. In such a situation, plaintiffs could have been confused as to the relationship between the hospital and the anesthesiologist when they filed their original, timely PCF complaint. Despite any perceived or actual confusion, the claim is still viable.

Here, as in *Benjamin*, after obtaining additional information from the hospital during the MRP process, plaintiffs amended their complaint to name Dr. Arena individually. Plaintiffs made this correction during the period when prescription was suspended under La. R.S. 40:1299.47, which specifically provides that the time in which a suit must be filed is suspended by the filing of a request for review by the MRP.

In *Guitreau, supra*, the court stated suspension of prescription constitutes a temporary halt to its running. Prescription is suspended for as

2

long as the cause of suspension continues. Additionally, La. C.C. art. 3472 makes clear that the time during which prescription is suspended is not counted toward the accrual of prescription. *Guitreau, supra*.

Thus, under the applicable law, it is clear during any period of suspension, plaintiffs should be afforded a reasonable opportunity to correct the information contained in their original PCF complaint, which initially alleged negligence by the anesthesiologist and was later corrected to individually name Dr. Arena when his responsibility for the delivery of anesthesia became known. As previously noted, defendants were placed on adequate notice of plaintiffs' claims by the initial complaint.

Based upon the circumstances of this case, plaintiffs' amended PCF complaint should relate back to the filing date of the original complaint. Thus, plaintiffs' amended complaint alleging negligence by Dr. Arena has not prescribed. Consequently, the trial court erred in sustaining the exception of prescription and I would reverse the judgment.

3